1  HEATHER M. VIGIL, Bar No. 254694
   MICHAEL L. KIBBE, Bar No. 302137
2  LITTLER MENDELSON, P.C.
   2050 Main Street
3  Suite 900
   Irvine, CA  92614
4  Telephone:  949.705.3000
   Fax No.:     949.724.1201
5
   Attorneys for Defendant
6  THE GEO GROUP, INC.

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAZMEN GREEN,<br><br>              Plaintiff,<br><br>v.<br><br>THE GEO GROUP, a California registered corporation, and DOES 1 THROUGH 10 INCLUSIVE,<br><br>              Defendants. | Case No.<br><br>**DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT** |

**TO THE CLERK OF THE FEDERAL DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLEASE TAKE NOTICE** that Defendant THE GEO GROUP, INC. ("GEO" or "Defendant") hereby removes this action from the Superior Court in the State of California for the County of San Bernardino to the United States District Court for the Central District of California, pursuant to 28 U.S.C. sections 1332, 1441 and 1446.

This Notice is based upon the original jurisdiction of the United States District Court over the parties under 28 U.S.C. section 1332(a), based on complete diversity of citizenship. In support of this Notice of Removal, Defendant state as follows:

## I. STATEMENT OF JURISDICTION AND VENUE

1. This action is a civil action over which this Court has original jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. section 1332(a), and is one which may be removed to this Court by Defendant pursuant to 28 U.S.C. section 1441(b) because it is a civil action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, as set forth below. 28 U.S.C. §§ 1332, 1441(a), and 1146(b).

2. This action was filed in Superior Court of California for the County of San Bernardino. Thus, venue properly lies in this Court pursuant to 28 U.S.C. sections 84(c)(2), 1391(a), and 1441(a).

## II. PLEADINGS AND PROCESS

3. On December 17, 2019, Plaintiff Jazmen Green ("Plaintiff") filed an unverified Complaint in the Superior Court of California for the County of San Bernardino (Case No. CIVDS1937982) asserting six causes of action for: (1) FEHA Discrimination; (2) FEHA Harassment; (3) FEHA Retaliation; (4) Wrongful Termination; (5) Violation of Labor Code section 1198.5; and (6) Violation of Labor Code section 226(b) (the "Complaint"). Declaration of Michael Kibbe in Support of Defendant's Notice of Removal ("Kibbe Decl."), ¶ 2, Ex. A. Per the proofs of service,

Plaintiff personally served a copy of the summons and Complaint on Defendant on January 9, 2020. *Id*.

4. Defendant filed its Answer to the Complaint in the Superior Court of the State of California for the County of San Bernardino on February 4, 2020. Kibbe Decl., ¶3, Ex. B.

5. On February 10, 2020, Defendant will file with the Clerk for the Superior Court of California for the County of San Bernardino a Notice to State Court of Removal to Federal Court in this action, together with a copy of Defendant's Notice to Federal Court of Removal. Kibbe Decl., ¶4, Ex. C.

6. The Complaint also names as defendants DOES 1-10. Defendant is informed and believe and on that basis allege that none of the fictitiously-named defendants have been served with a copy of the Summons and Complaint. Therefore, the fictitiously-named defendants are not parties to the above-captioned action and need not consent to removal. *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980); 28 U.S.C. section 1441(a).

7. The Kibbe Declaration sets forth all the process, pleadings, and orders filed, to be filed, or served upon Defendant (to Defendant's current knowledge) in this action to the present date. Kibbe Decl., ¶5.

### III. TIMELINESS OF REMOVAL

8. This Notice of Removal is timely. Under 28 U.S.C. section 1446(b)(1), the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

9. Defendant filed this removal on February 7, 2020, which is within thirty days after Defendant was served with the Complaint. This removal is therefore timely under 28 U.S.C. section 1446(b)(1).

## IV. DIVERSITY OF CITIZENSHIP

10. The Court has jurisdiction over this action because complete diversity of citizenship between citizens of different states exists and the matter in controversy exceeds the sum of $75,000.00, exclusive of interests and costs. 28 U.S.C. § 1332(a).

### A. Complete Diversity of Citizenship Exists Between the Parties Because Plaintiff is a California Citizen and Defendant is a Florida Citizen.

11. For diversity purposes, a person is a "citizen" of the state in which she is domiciled. *See* 28 U.S.C. § 1332(a)(1); *see also Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that a person's domicile is the place she resides with the intention to remain); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship); *see also Id. at* 519-20 (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"). The Complaint states that Plaintiff was a resident of San Bernardino County, California, and at all times relevant to the Complaint, was employed in the State of California. Complaint, ¶¶1, 3-5. Plaintiff is therefore a citizen of California.

12. For diversity purposes, a corporation "shall be deemed a citizen of any State in which it is incorporated and of the State where it has its principal place of business." 28 U.S.C. §1332(c)(1). GEO is incorporated in the state of Florida and has Florida as its principal places of business. Declaration of Karen Broadwater ("Broadwater Decl."), ¶2. All of GEO's business, executive, and administrative operations, including any California operations, are centrally managed from its headquarters in Florida. *Id*. The majority, if not all, of GEO's executive and administrative functions are performed in Florida. Meetings of GEO's Board of Directors generally take place in Florida, and GEO's financial records are maintained

in Florida. GEO's principal place of business is not California. *Id*. GEO's corporate officers who direct, control and coordinate operations are also located in GEO's corporate headquarters in the State of Florida. *Id.* at ¶3. Specifically, GEO's CEO, CFO, General Counsel, Executive Vice President – Human Resources, and Senior Vice President of US Corrections are located in the State of Florida. *Id*. From its headquarters in Florida, GEO makes and implements company-wide operating, financial, investment, employee relations, marketing, accounting, income tax, treasury, investor relations, and legal policy decisions. *Id.* at ¶4. GEO's tax returns are neither prepared in nor filed in California. *Id.* The Supreme Court's decision in *Hertz v. Friend*, 130 S. Ct. 1181, 1192 (2010), clarified that a corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities," which should "normally be the place where the corporation maintains its headquarters." *See also Breitman v. May Co. Cal.,* 37 F.3d 562, 564 (9th Cir. 1994) (corporation was citizen of state in which its corporate headquarters was located and where its executive and administrative functions were performed). Thus GEO is a citizen of Florida, not California.

13. DOES 1 to 10 are fictitious defendants and must be disregarded for the purpose of determining diversity jurisdiction. 28 U.S.C. § 1441(a); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (The "district court was correct in only considering the domicile of the named defendants").

14. Diversity of citizenship therefore exists because Plaintiff is a citizen of a state (California) different from the Defendant (Florida). 28 U.S.C. § 1332(a).

### B. The Amount in Controversy Exceeds $75,000.00.

15. Plaintiff's Complaint states within his Prayer for Relief that she alleges and seeks "general, compensatory, and special damages." Complaint: Prayer for Relief, ¶ 1. Additionally, she seeks an undisclosed amount in further damages for punitive damages and attorney fees. Complaint: Prayer for Relief, ¶ 2-4.

16. The failure of the Complaint to specify the total amount of damages is inconsequential. *See White v. J.C. Penny Life Ins. Co.*, 861 F. Supp. 25, 26 (S.D. W. Va. 1994) ("The defendant may remove a suit to federal court notwithstanding the failure of the plaintiff to plead a specific dollar amount in controversy . . . otherwise . . . any Plaintiff could avoid removal simply by declining . . . to place a specific dollar value upon its claim."). Rather, Defendant need only establish by a **preponderance of evidence** that Plaintiff's claims exceed the jurisdictional minimum. *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Thus, notwithstanding Plaintiff's failure to allege the total amount of damages she claims, the amount in controversy as alleged through the Complaint in this case exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

17. Defendant generally and specifically denies Plaintiff's allegations in the Complaint. In assessing the amount in controversy, however, a court must assume that a jury will return a verdict for the Plaintiff on all claims. See, e.g., *Kenneth Rothchild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 993, 1001 (C.D. Cal. 2002).

18. **Compensatory Damages**: Compensatory damages are the foundation for determining the amount in controversy. *Bell v. Preferred Life Assur. Soc'y of Ala.*, 320 U.S. 238, 241 (1943); *Bassett v. Toyota Motor Credit Corp.*, 818 F. Supp. 1462, 1464-65 (S.D. Ala. 1993).

19. Plaintiff's last day of employment was on November 6, 2018 and she was being paid $18.07 per hour and approximately $1,156.48 per biweekly pay period. Broadwater Decl., ¶7; Kibbe Decl., ¶6. Assuming this case goes to trial in 18 months and assuming she prevails on only her claim for wages in connection with his termination, Plaintiff would be entitled to lost earnings as back pay damages in the amount of $92,711.15. Kibbe Decl., ¶6.

20. Further, Plaintiff can seek future damages in connection with his allegations against Defendant. Front pay awards in California frequently span a number of years. *See, e.g.*, *Smith v. Brown-Forma Distillers Corp.,* 196 Cal. App. 3d 503, 518, 241 Cal. Rptr. 916 (1989) (front pay until mandatory retirement age reached); *Rabago-Alvarez v. Dart Indus., Inc.*, 55 Cal. App. 3d 91, 97-98, 127 Cal. Rptr. 222 (1976). Even conservatively estimating that Plaintiff seeks front pay benefits for one year, the amount of future wages in controversy in this case would total approximately an additional $30,068.48. Kibbe Decl., ¶ 6. Thus, it may reasonably be estimated that Plaintiff's claims of back pay and front pay more likely than not exceed the sum of $122,779.63 – well above the $75,000.00 threshold. *Id*.

21. As such, Plaintiff's claims for lost wages, without more, more than satisfy the amount in controversy requirement to establish federal diversity jurisdiction and Defendant has more than satisfied the minimal preponderance of evidence standard.

22. **General Damages.** The amount in controversy analysis also includes claims for "general damages," including damages for pain and suffering and emotional distress. Plaintiff claims she has suffered "emotional and mental distress, anguish, embarrassment and humiliation." Complaint, ¶¶22, 28, 38; *see Ajimatanrareje v. Metro. Life Ins. Co.*, 1999 U.S. Dist. LEXIS 7339, at *4-5 (N.D. Cal. May 12, 1999) (finding that emotional distress damages "may be considered in the amount in controversy even where not clearly pled in the complaint"); *Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp 1196, 1198 (N.D. Cal. 1998). Therefore, the Court should also include these potential damages in the amount in controversy analysis.

23. **Punitive Damages.** Punitive damages are also included in calculating the amount in controversy if they are recoverable under state law. *Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963); *see also Richmond v. Allstate Ins. Co.*, 897 F.Supp 447, 450 (S.D. Cal. 2003). In her

1  Complaint, Plaintiff alleges that she is entitled to punitive damages against Defendant
2  alleging that it acted with "malice, fraud and oppression and with conscious disregard
3  for [Plaintiff's] rights." *See e.g.*, Complaint, ¶35. If Plaintiff successfully establishes
4  these allegations, she may be entitled to recover punitive damages under California
5  Civil Code § 3294. California law does not provide monetary limitations on the
6  amount of punitive damages that may be awarded under said statute. Rather, the
7  proper amount of punitive damages is determined based on the reprehensibility of a
8  defendant's misdeeds, the ratio between compensatory and punitive damages, and the
9  ratio between damages and a defendant's net worth. *Boyle v. Lorimar Productions,*
10 *Inc.*, 13 F.3d 1357, 1359-60 (9th Cir. 1994).

11   24.   Indeed, some courts have recognized that an award for punitive damages
12 can be significant, and that in some cases, a punitive award itself could establish the
13 amount in controversy. *See*, *e.g., Aucina v. Amoco Oil Co.*, 871 F. Supp. 332, 334
14 (S.D. Iowa 1994). (concluding in discrimination and wrongful termination case that
15 the purpose of punitive damages is to capture a defendant's attention and deter others
16 from similar conduct, and thus, the plaintiff's claim for punitive damages could alone
17 exceed the jurisdictional minimum). Accordingly, any potential punitive damages
18 award must also be considered in determining the amount in controversy.

19   25.   **Attorney's Fees.** Plaintiff also seeks attorneys' fees. *Galt G/S v. JSS*
20 *Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (recognizing that "where an
21 underlying statute authorizes an award of attorneys' fees, . . . such fees may be
22 included in the amount in controversy."). In actions brought under the FEHA, the
23 court, in its discretion, may award to the prevailing party reasonable attorneys' fees.
24 CAL. GOV'T CODE § 12965 (b). Specifically, in determining the amount of reasonable
25 attorneys' fees to be awarded, courts often rely on the lodestar amount—calculated by
26 multiplying the number of hours worked by each person entitled to compensation by
27 the reasonable hourly rate for those activities. *Serrano v. Priest*, 20 Cal. 3d 25, 48
28 (1977).

26. In fact, the attorneys' fees alone through trial of any cause of action would likely exceed $75,000.00, and could be many times that amount. Among the many ways to demonstrate prevailing market rates, are the following: (1) declarations from local attorneys (*U.S. v. City & County of San Francisco*, 748 F.Supp. 1416, 1431 (N.D. Cal. 1990)); (2) rates awarded to the claiming attorneys in previous actions (*Margolin v. Regional Planning Comm'n*, 134 Cal.App. 3d 999 (1982)); and (3) rates awarded to attorneys of comparable experience in other cases in the same market (*Id.*). In this case, attorneys' fees alone are likely to exceed $75,000.00 should Plaintiff prevail. *See e.g. Flannery v. Prentice*, 26 Cal. 4th 572 (2001) (upholding an award of attorneys' fees under the Fair Employment and Housing Act ("FEHA") for $1,088,231); *Dwyer v. Crocker Nat'l Bank*, 194 Cal. App. 3d 1418 (1987) (upholding award of $75,258 in attorneys' fees under the FEHA); *Zissu v. Bear, Stearns & Co.*, 805 F.2d 75 (1986) (upholding $550,000 in attorneys' fees awarded under the FEHA).

27. Thus, by virtue of the claims Plaintiff asserts in this case, the preponderance of evidence demonstrates that she seeks damages in excess of seventy five thousand dollars ($75,000.00), and, therefore, removal is proper. *See DeAguillar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995) (holding that removal is proper where "the defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount"); *accord Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (finding that facts presented in notice of removal, combined with plaintiff's allegations, are sufficient to support finding that jurisdictional limits are satisfied).

## V. NOTICE TO PLAINTIFF AND STATE COURT

28. As required by 28 U.S.C. section 1446(b), Defendant will provide Plaintiff, through her counsel, with written notice of this removal.

29. As required by 28 U.S.C. section 1446(d), Defendant will file a copy of this Notice of Removal with the Superior Court of California for the County of San Bernardino.

WHEREFORE, Defendant respectfully petitions the removal of this case from the Superior Court of the State of California for the County of San Bernardino to this United States District Court for the Central District of California.

Dated: February 7, 2020

/s/Michael Kibbe
HEATHER M. VIGIL
MICHAEL L. KIBBE
LITTLER MENDELSON, P.C.
Attorneys for Defendant
THE GEO GROUP, INC.

**PROOF OF SERVICE BY MAIL**

I am employed in Orange County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 2050 Main Street, Suite 900, Irvine, California 92614. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. On February 7, 2020, I placed with this firm at the above address for deposit with the United States Postal Service a true and correct copy of the within document(s):

DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT

in a sealed envelope, postage fully paid, addressed as follows:

C. Veronica Cutler, Esq.
CUTLER LEGAL, A LAW FIRM
250 West First Street, Suite 316
Claremont, CA  91711
Phone: 909.999.0552
Fax: 909.912.8480
Email: cutlerlegal@gmail.com

Following ordinary business practices, the envelope was sealed and placed for collection and mailing on this date, and would, in the ordinary course of business, be deposited with the United States Postal Service on this date.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 7, 2020, at Irvine, California.

Cecilia D. Mendoza

4833-2569-5154.1 059218.1409

10.